1999 UT 96

**STATE of Utah, Plaintiff and Appellee,**

v.

**Forrest WHITTLE, Defendant and Appellant.**

No. 970112.

Supreme Court of Utah.

Oct. 8, 1999.

Jan Graham, Atty. Gen., J. Frederick Voros, Jr., James Beadles, Salt Lake City, for plaintiff.

Craig S. Cook, Salt Lake City, for defendant.

DURHAM, Associate Chief Justice:

¶1 Defendant Forrest Whittle appeals from a jury conviction for murder, a first degree felony in violation of Utah Code Ann. § 76–5–203. Whittle asserts that because of flagrant prosecutorial misconduct during the grand jury proceedings leading to his indictment, the indictment and subsequent conviction should be set aside. In addition, he argues that because there is a reasonable likelihood that, absent a combination of evidentiary errors at trial, he would not have been convicted, his conviction should be set aside. We affirm.

¶2 According to the testimony at trial, early in the afternoon of May 11, 1986, Whittle and Mike Staples went to the basement apartment of Tim Robinson at the corner of 800 East and Bryan Avenue in Salt Lake City, Utah. Tina Schroyer and her two children lived in the apartment with Robinson. Whittle, Staples, Robinson, and Schroyer "hung out, Whittle partied, [and] dr[a]nk." At some point in the afternoon, defendant produced a blue .38 caliber handgun and tried to trade it to Robinson for marijuana.

¶3 At approximately two in the afternoon, Lisa Strong, a 25–year–old woman unacquainted with Whittle, walked past Robinson's apartment on the sidewalk. Whittle tried to get her attention but because she was wearing headphones he could not. Schroyer testified that Whittle became angry, "was jumping around and calling" Ms. Strong obscenities, "and saying that stuff about how all women are the same and he can't stand them."

¶4 Around midnight, Whittle, Robinson, and Staples were outside watching Robinson's dog. Staples and Robinson went into the house. While Staples was climbing the stairs from the basement apartment to return outside, he heard five or six gunshots. He came around a corner of the building and

saw Whittle standing in the street lowering a handgun. Robinson also heard the shots. Robinson awakened Schroyer to ask if she had heard them. She had not, but both heard several dogs going "crazy." Through the window Schroyer saw Whittle run by the house.

¶ 5 Norman Sharples, a neighbor who also heard the shots, walked outside and discovered Ms. Strong's body. Ms. Strong had been shot in the temple with a .38 caliber handgun. Several witnesses testified that they heard a car drive away after the shooting.

¶ 6 The following day, Whittle told Staples, "Whatever you saw that night, it didn't happen." Two days later, Whittle told Schroyer, "I'm the one that killed that girl." Schroyer asked him "which girl?" Whittle answered, "the Strong girl, the Lisa Strong girl on the corner." Schroyer then asked Whittle why he had done it. He "said because he had just gotten a gun and he wanted to see if it worked. [H]e thought it was funny because she didn't even hear what was going on, she was wearing headphones." Schroyer also testified that Whittle telephoned her and said in a disguised voice that "he was going to come downstairs and do me like he did Lisa Strong." A few weeks later, Whittle told Robinson that "he [had] killed the bitch on the corner." In the summer of 1986, a witness named Douglas Batemen heard Whittle say that he had "capped a bitch downtown." On that same occasion, another witness, Terrence Robinson, heard Whittle say, "I capped a bitch." In December of 1994, Whittle told a cellmate, Derald Ross, that he killed a woman in Utah with a .38 caliber handgun.

¶ 7 In 1991, Whittle told police that he did not know Tim Robinson and that he knew nothing about Lisa Strong's murder. Later he admitted going to Robinson's house in 1986. Whittle told police that Robinson showed him a gun. He also stated that around midnight he was on the lawn with Staples and Robinson and heard a single shot fired while his head was turned. According to Whittle, when he turned he saw Robinson holding the gun and pointing it toward the corner of Bryan Avenue and 800 East.

¶ 8 On March 15, 1995, a grand jury was convened to consider the case and unanimously voted to indict Whittle on charges of murder. Whittle moved the trial court to dismiss the indictment due to prosecutorial misconduct. The court denied the motion. Whittle then filed a petition for interlocutory appeal with this court seeking review of the grand jury proceeding, which we denied.

¶ 9 After trial in March of 1996, the jury entered a verdict finding Whittle guilty of murder in violation of Utah Code Ann. § 76-5-203, a first degree felony, from which this appeal has been taken.

## GRAND JURY PROCEEDINGS

¶ 10 Whittle alleges that during the grand jury proceeding leading to the indictment in this case, the prosecutor engaged in "flagrant" misconduct that significantly affected the grand jury's ability to exercise independent judgment. Among other things, the alleged misconduct included: references to unrelated murders; presentation of improper and inaccurate character evidence including evidence of prior convictions; expression of the prosecutor's personal opinion; failure to present exculpatory evidence as required by Utah law; and use of hearsay evidence.

¶ 11 Whittle asks this court to adopt the approach of the Tenth Circuit Court of Appeals in *United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir.1987). *Kilpatrick* holds that, when faced with the question of prosecutorial misconduct in grand jury proceedings, a court must first determine whether the alleged misconduct or error can properly be characterized as procedural or technical or whether it actually threatened "the defendant's right to fundamental fairness." *Id.* at 1466. According to the court in *Kilpatrick*, "[i]f the errors can be characterized as procedural violations affecting only the probable cause charging decision by the grand jury, then the defendant must have successfully challenged the indictment before the petit jury rendered a guilty verdict." *Id.* (quoting *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)).

¶ 12 We do not find the *Kilpatrick* distinction helpful. The purpose and function of the grand jury is "not only to examine into the commission of crimes, but to stand

between the prosecutor and the accused, and to determine whether the charge [is] founded upon credible testimony or was dictated by malice or personal ill will." *Hale v. Henkel,* 201 U.S. 43, 59, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Whether an indictment is questionable because of significant procedural versus substantive misconduct makes little difference. In either case, an indicted party (as happened in this case) may move the trial court to dismiss a grand jury's indictment. If the trial court denies that motion, the indicted party may petition this court for interlocutory appeal of that order (as also happened here).

■ ¶ 13 However, once a trial jury has rendered a guilty verdict, any error or misconduct associated with the grand jury proceeding must generally be considered harmless.[1] As the United States Supreme Court noted in *Mechanik,* 475 U.S. at 70, 106 S.Ct. 938, a

> petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendant[ ] was guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

The Court further observed that "[t]he reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences." *Id.* at 72, 106 S.Ct. 938 (citing *Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). While we agree with this point, we do not rely entirely on factors related to judicial economy. Whittle has had the review of the trial court of his motion to quash the indictment, the opportunity to persuade this court to look at the trial court's decision on interlocutory appeal, and finally and most importantly, the decision of the trial jury on the merits of the charges against him. The jury found not merely that there was probable cause to believe that Whittle committed the crime with which he was charged, but that he was guilty beyond a reasonable doubt of the charge.

¶ 14 Our holding today fully accords with the position we suggested in *State v. Humphrey,* 823 P.2d 464, 467 n. 6 (Utah 1991). In *Humphrey* we held that the bindover orders of magistrates were not the equivalent of orders of a circuit court for purposes of appeal. We recognized that if bindover orders "were in fact orders of a circuit court," then the defendant would have an automatic right of appeal, which "would not be satisfied if the defendant first had to endure a trial in the district court, because any challenges to the bindover order would be mooted by the trial verdict." *Id.* We see no reason to adopt a different approach when a defendant is charged by grand jury indictment rather than by information.

1. The rule is not, however, absolute. There may be circumstances where such errors are not harmless. For example, applying federal law, the United States Supreme Court, has held that it is proper to dismiss an indictment even after the petit jury has rendered a guilty verdict: "if, after examining the record as a whole, a court concludes that an error may have had a 'substantial influence' on the outcome of the proceeding" or "if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (citing *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The Court also has identified a class of cases in which indictments should be dismissed without a particular assessment of prejudice to the defendant because the errors are deemed fundamental. These cases allow for post-conviction dismissal of an indictment where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Bank of Nova Scotia,* 487 U.S. at 256–57, 108 S.Ct. 2369. Examples of when such errors have been considered so fundamental as to warrant dismissal after conviction include racial discrimination in selection of the grand jurors, *Vasquez v. Hillery,* 474 U.S. 254, 260–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) and the exclusion of women from the grand jury, *Ballard v. United States,* 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946). *See also Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1988).

¶ 15 Finally, we note that the foregoing view has been adopted by numerous courts across the country. *See, e.g., United States v. Dugan,* 150 F.3d 865, 868 (8th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 528, 142 L.Ed.2d 438 (1998); *United States v. Eltayib,* 88 F.3d 157, 173 (2d Cir.1996), *cert. denied,* 519 U.S. 1045, 117 S.Ct. 619, 136 L.Ed.2d 543 (1996); *United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir.1996); *United States v. Console,* 13 F.3d 641, 671–72 (3d Cir.1993), *cert. denied,* 511 U.S. 1076, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994); *Guam v. Muna,* 999 F.2d 397, 399 (9th Cir.1993); *United States v. Valencia–Lucena,* 925 F.2d 506, 511 (1st Cir. 1991); *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593, 618 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); *People v. Tyler,* 802 P.2d 1153, 1154 (Colo.Ct. App.1990); *State v. Kilby,* 130 Idaho 747, 947 P.2d 420, 423–24 (Ct.App.1997); *State v. Tempest,* 660 A.2d 278, 280 (R.I.1995).

### TRIAL ERROR

■ ¶ 16 While we hold that a jury verdict moots a challenge to a grand jury indictment based on prosecutorial misconduct, it remains true that the jury verdict itself must be free of prejudicial error. Accordingly, we now turn to Whittle's second argument, that absent evidentiary errors at trial there is a reasonable likelihood that the outcome would have been more favorable to him.

■ ¶ 17 Whittle alleges that several evidentiary errors occurred during his trial. In connection with some of these claimed errors, he argues that his attorneys were ineffective in failing to object properly. We will consider each alleged error in turn. It is, of course, not sufficient for defendant to show that errors occurred; he must also demonstrate a reasonable likelihood that—absent the errors—he would have had a more favorable trial result. *See State v. Johnson,* 784 P.2d 1135, 1140 (Utah 1989). A reasonable likelihood of a more favorable outcome exists when the appellate court's confidence in the verdict is undermined. *See State v. Knight,* 734 P.2d 913, 920 (Utah 1987). Likewise, for a defendant to prevail on a claim for ineffective assistance of counsel, this court's confidence in the outcome of the trial must be undermined. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶ 18 Whittle first argues that the trial court erred by excluding hearsay statements made prior to trial by James Sherrard, a witness who was an inmate at the Utah State Penitentiary. Sherrard made at least three statements to investigators regarding Whittle's involvement in the murder. The first, made in 1988, and the third, made in 1996, were unsworn statements. On those occasions, Sherrard stated that Whittle was not present at the Robinson home at any time on the day of the murder. The second statement, made in 1993, was given under oath. On that occasion, Sherrard recanted his previous statement and stated that he had made it up to confuse the investigators. At trial, Sherrard was to be the first witness called by the defense. Shortly before he was called, the defense learned that Sherrard was likely to invoke his Fifth Amendment right to silence when called. Defense counsel argued to the trial court that by invoking the Fifth Amendment, Sherrard would become "unavailable" under Utah Rule of Evidence 804,[2]

2. Rule of Evidence 804 reads:

(a) *Definition of unavailability.* "Unavailability as a witness" includes situations in which the declarant:
(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.
A declarant is not unavailable as a witness if the exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

and therefore that his prior statements should come in as "statement[s] against interest" because those statements placed him at the scene of the crime and therefore automatically a suspect in the crime. In the alternative, defense counsel argued that the prior statements were also admissible because they had sufficient "circumstantial guarantees of trustworthiness" as contemplated by rule 804(b)(5). The trial court disagreed, holding that the statements were inadmissible hearsay.

¶ 19 While on the stand, Sherrard admitted that he knew Robinson and that he had learned about the shooting. He then invoked the Fifth Amendment and refused to testify further. At that point, defense counsel did not ask the court to require Sherrard to testify, and he was dismissed. However, at the start of trial the following morning, the defense moved the court to bring Sherrard back to testify on the ground that Sherrard had been improperly allowed to rely on the Fifth Amendment. Defense counsel argued that it was inconsistent to allow Sherrard to plead the Fifth Amendment and simultaneously to find that his prior statements on the matter were not "statements against interest" under rule 804(b)(3). The defense further argued that if Sherrard were recalled and still refused to testify despite court order, his prior statements should come in under Utah Rule of Evidence 801.[3] The court did not allow Sherrard to be recalled.

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

(2) *Statement under belief of impending death.* In a civil or criminal action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, if the judge finds it was made in good faith.

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(4) *Statement of personal or family history.* (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption or marriage, ancestry, or other similar fact of personal or family history, even though the declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

(5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Utah R. Evid. 804(a)(1)-(5), (b)(1)-(5).

3. Rule 801 reads in pertinent part:

(d) *Statements which are not hearsay.* A statement is not hearsay if:

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (A) inconsistent with the declarant's testimony or the witness denies having made the statement or has forgotten, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person....

Utah R. Evid. 801(d)(1).

Following the jury's verdict, defense counsel renewed the motion for a third time in a motion for a new trial, which was denied.

¶ 20 A trial court has broad discretion to admit or exclude evidence and its determination typically will only be disturbed if it constitutes an abuse of discretion. *See State v. Pena*, 869 P.2d 932, 938 (Utah 1994). A trial court abuses its discretion if it acts unreasonably. *See State v. Larsen*, 865 P.2d 1355, 1361 (1993). However, when the evidentiary ruling at issue is an independent legal issue and does not involve the balancing of factors, we review the determination for correctness. *See State v. Dunn*, 850 P.2d 1201, 1222 n. 22 (1993).

¶ 21 In the present case, the trial court may have committed error by failing to allow the defense to recall Sherrard to the stand.[4] On the other hand, failing to obtain an explicit ruling from the court on its motion to recall Sherrard (which was itself untimely) may have constituted ineffective assistance of counsel.[5] We need not resolve those issues here, however, because in either case defendant has the burden of showing at least the likelihood of prejudice. *See State v. Johnson*, 784 P.2d 1135, 1140 (Utah 1989) (holding that an erroneous evidentiary ruling will lead to reversal only if, absent the errors, there is a reasonable likelihood of a more favorable result for the defendant); *State v. Tyler*, 850 P.2d 1250, 1259 (Utah 1993) (holding that "a defendant claiming ineffective assistance of counsel has the difficult burden of showing *actual unreasonable representation and actual prejudice* ") (emphasis added). Whittle has failed to do so.

¶ 22 Had the trial court admitted the two prior statements of Sherrard that were exculpatory, it would also have had to admit his prior (sworn) statement recanting the exculpatory statements and describing his intent to confuse investigators. If the court had ordered Sherrard to testify and he had complied, no matter which version of Whittle's involvement he chose to tell at trial, his testimony would have been impeached by at least one prior inconsistent statement. Likewise, if he had refused to testify under penalty of contempt, his prior inconsistent testimony would have been admissible. We do not see how the failure of the jury to hear Sherrard's inconsistent, and therefore unreliable, testimony prejudiced Whittle. It is unlikely that he would have been acquitted. *See Johnson*, 784 P.2d at 1140. The fact that the jury did not hear this evidence does not undermine our confidence in the outcome of the case. *See State v. Knight*, 734 P.2d 913, 920 (Utah 1987).

¶ 23 Whittle next asserts that the trial court erred in allowing the testimony of Derald Ross, a former cellmate of Whittle's, who testified that Whittle told him he had "used a .38 caliber [gun] to kill a woman here in Utah." Whittle claims error because (1) the State failed to provide the defense with adequate discovery regarding the witness as required under rule 16(g) of the Utah Rules of Criminal Procedure, and (2) under Utah Rule of Evidence 403,[6] the probative value of Ross' testimony was substantially outweighed by the danger of unfair prejudice.

¶ 24 Whittle argues that because the State failed to inform the defense that Whittle and Ross had been in a serious altercation

---

4. We note that under rule 801 of the Utah Rules of Evidence a prior statement by a witness is admissible if it is inconsistent with the witness testimony at trial. Federal courts have held that " 'inconsistency [under the federal rule] is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position.' " *United States v. Matlock*, 109 F.3d 1313, 1319 (8th Cir. 1997) (quoting *United States v. Russell*, 712 F.2d 1256, 1258 (8th Cir.1983) (per curiam)). Accordingly, if Sherrard had re-taken the stand and persisted in his refusal to testify despite the court's order to do so, his prior statements would have been admissible essentially to impeach his silence.

5. *See State v. Ortiz*, 782 P.2d 959, 961 (Utah Ct.App.1989) (holding that "it is the objecting party's obligation to obtain a ruling on the objection, or such objection is waived on appeal" (citation omitted)).

6. Rule 403 reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Utah R. Evid. 403.

while incarcerated together, defense counsel failed to move to exclude Ross' testimony or to adequately cross-examine him about his motives for testifying. The absurdity of this argument is apparent if we simply rephrase it as follows: Whittle argues that because the State failed to inform him that he and Ross had been in a serious altercation while in prison together, his lawyers failed to move the court to exclude Ross' testimony or adequately cross-examine him. However, as the State has pointed out, Whittle himself obviously knew that Ross had been his cellmate and that he and Ross had been in an altercation; the State had no obligation to so inform him.

■ ¶ 25 This incident cannot be viewed as a discovery violation on the part of the State. *See State v. White,* 931 S.W.2d 825, 832–33 (Mo.Ct.App.1996) (holding that "there is substantial authority that the prosecutor cannot be cited for a discovery violation where the defendant had knowledge of the existence of the item that the State failed to disclose"). Nor is it properly seen as ineffective assistance of counsel. It was Whittle himself who apparently failed to provide his attorneys with the information regarding the altercation. We agree that "[i]n general, counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson,* 116 F.3d 149, 152 (5th Cir.1997).

■ ¶ 26 Whittle also alleges that his statement to Ross should have been excluded because it did not identify a specific location in Utah, a specific description of the alleged victim, a time frame, or any other information that would have substantially identified the purported victim as Lisa Strong. Whittle therefore contends that the testimony should have been excluded under Utah Rule of Evidence 403 as being unduly prejudicial.

¶ 27 Whittle makes the same argument regarding the testimony of Douglas Batemen, Janet Bateman, and Terrence Robinson. Mr. Bateman testified that in 1986 he heard Whittle say he had "capped a bitch downtown." Robinson testified that on the same occasion he heard Whittle say that he had "capped a bitch." Ms. Batemen testified that in 1986 her husband Douglas Batemen

told her that Whittle had stated he had "capped a bitch." According to Whittle, all of this testimony should have been excluded because it was vague on the one hand but highly likely to arouse the hostility and passions of the jury on the other. Whittle argues that the reasoning in *State v. Troyer,* 910 P.2d 1182, 1191 (Utah 1995), compels such a conclusion.

¶ 28 In *Troyer,* the defendant had been charged with the murder of an 80–year–old woman. When questioned by police, he told them that he had escaped from prison because "he had attempted to rape a 60–year–old woman" and was "getting nervous" about it. *Troyer,* 910 P.2d at 1184. Years earlier, Troyer had pled guilty to attempted rape of an elderly woman. *See id.* at 1191. The trial court concluded that Troyer's statement was "highly ambiguous" because it was not clear to which murder it referred. *See id.* Moreover, the trial court reasoned that Troyer would have had to acknowledge his prior conviction in order to rebut the inference the jury would make that his statement referred to the current crime. We affirmed the trial court's ruling excluding the evidence of the statement.

¶ 29 *Troyer* is inapplicable here. The statement in *Troyer* was ambiguous and confusing because there was in fact another prior crime to which it might have referred. In the present case, there is no similar ambiguity or possibility of confusion; Whittle has not been implicated in more than one murder. Furthermore, it would be unreasonable to require that incriminating statements must be specific to time, place, and victim in order to be admissible. The trial court did not err in admitting the testimony.

¶ 30 Whittle's third claim is that the trial court erred by admitting the testimony of officer James Bell that Schroyer had at some time in the past provided evidence to the police that had helped solve an unrelated murder. Bell was the officer in charge of the task force investigating the murder of Lisa Strong. He was called as a defense witness at trial. Bell's testimony made it clear that Schroyer gave the police "various stories" about the Lisa Strong murder at different

times. On cross-examination, the prosecution asked Bell: "Now, isn't it true that Tina Schroyer has helped you satisfactorily solve another homicide?" Defense counsel objected, and after a side-bar conference, the court allowed the prosecutor to ask: "She gave you information that ultimately led to the conviction of somebody else on another homicide; isn't that true?" Bell agreed.

¶ 31 Both below and on appeal, Whittle has argued that this evidence was irrelevant and inadmissible under Utah Rule of Evidence 608.[7] The trial court ruled that the testimony was relevant because Bell's testimony depicted Schroyer as unreliable, yet he himself had relied on her in the past. We agree that the information sought on cross-examination was relevant to the question of whether the officer believed that information from Schroyer was reliable. On appeal, Whittle also alleges that his counsel was ineffective in that he should have objected to Bell's testimony because it was being offered solely for the purposes of bolstering Schroyer's credibility in violation of rule 608, which prohibits such testimony except in certain circumstances. The State argues that the question and the answer fall within the exception found in 608(b), which provides that "specific instances of conduct" may "if probative of the truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

¶ 32 We have previously held that under rule 608(b) a party may not introduce

bolstering evidence on direct examination. See *State v. Hovater*, 914 P.2d 37, 41–42 (Utah 1996). However, in the present case, the prosecution did not elicit Detective Bell's testimony on direct examination. Rather, it was elicited on cross-examination as rebuttal to a series of answers given on direct examination that discredited Schroyer's veracity. Admittedly, during direct examination officer Bell did not state specifically that Schroyer had a "reputation" for untruthfulness. Nevertheless, the clear import of his testimony regarding Schroyer was to undermine her credibility generally. Accordingly, the testimony on cross-examination was properly admitted under rule 608(b) to impeach officer Bell's testimony on direct that Schroyer was an unreliable informant.

¶ 33 Finally, Whittle claims that his counsel acted ineffectively by failing to object to Schroyer's testimony regarding her allegedly inconsistent prior statements. Specifically, Whittle objects to the following exchange which occurred on the prosecution's redirect examination:

Q: Ms. Schroyer, you indicated that you never told the detectives about seeing Forrest run by the house on the night this took place?

A: Correct.

Q: And you never told Ross Anderson. Do you remember though having to testify in front of the grand jury in March of last year?

A: Yes.

Q: And did you tell the grand jury in March of last year under oath and in the courtroom setting very similar to this, that

---

7. Rule 608 reads in pertinent part:

> (a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> (b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Utah R. Evid. 608(a), (b).

the person you saw run by your house after you heard the dogs bark was Forrest Whittle?

A: Yes.

Q: And you remember testifying a few months later in December of 1995 in a video deposition?

A: Yes.

Q: Okay. And at that time, did you tell the Court with Mr. Whittle present as he is here today, under oath, that the person you saw running by the house was Forrest Whittle?

A: Yes, I did....

....

Q: Did you on two other occasions testify under oath in a courtroom that the person you saw running by the house, by your house on May 12th of 1986 was Forrest Whittle?

A: Yes, I did.

¶ 34 Whittle alleges that this testimony is hearsay and that it is inadmissible under Utah Rule of Evidence 801(d)(1)(B), which defendant argues allows admission of a prior consistent out-of-court statement only if the statement pre-dates the time at which the witness would have had motivation to change her testimony. However, the State urges, and we agree, that the testimony is admissible under Utah Rule of Evidence 801(d)(1)(C), which makes clear that a prior statement is not hearsay if it is "one of identification of a person made after perceiving the person." Utah R. Evid. 801(d)(1)(C). " '[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance.' " *Codianna v. Morris,* 660 P.2d 1101, 1109 (Utah 1983) (quoting *State v. Malmrose,* 649 P.2d 56, 58 (Utah 1982)). Accordingly, we reject Whittle's ineffective assistance claim.

¶ 35 In conclusion, we hold that a petit jury verdict of guilt moots a challenge to a grand jury indictment. We also hold that any evidentiary errors that occurred during Whittle's trial were not substantial enough to undermine our confidence in the jury's verdict. Affirmed.

¶ 36 Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM's opinion.

