2002 UT App 295

**STATE of Utah, Plaintiff and Appellee,**

v.

**Charles WALLACE, Defendant and Appellant.**

**No. 20000543–CA.**

Court of Appeals of Utah.

Sept. 12, 2002.

---

**3.** The specific intent element has since been removed from the statute. *See* Utah Code Ann.

§ 76–5–301.1 (Supp.2001).

Wesley M. Baden, Utah County Legal Defender, Vernal, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before JACKSON, P.J., ORME and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Defendant Charles Wallace appeals from his convictions for Attempted Tampering with Evidence, a third degree felony, in violation of Utah Code Ann. § 76–8–510 (1995), Assault Against a Police Officer, a class A misdemeanor, in violation of Utah Code Ann. § 76–5–102.4 (1995), Possession of Drug Paraphernalia, a class B misdemeanor,

in violation of Utah Code Ann. § 58–37a–5 (1998), Driving While Driving Privilege Suspended or Revoked, a class C misdemeanor, in violation of Utah Code Ann. § 53–3–227 (1998), and Illegal Parking, an infraction, in violation of Utah Code Ann. § 41–6–103 (1998). We affirm.

## BACKGROUND

¶ 2 On March 1, 1998, Officer Paul Davis, a conservation officer for the Division of Wildlife Resources, was patrolling along the Green River. During his patrol, Davis observed a vehicle parked illegally on a boat ramp on the Green River at Flaming Gorge. Soon thereafter, Davis saw Wallace approach the boat ramp, walking toward the illegally parked vehicle. Davis informed Wallace that he had parked illegally, and that he would have to move the vehicle before he returned to fishing. Davis then asked Wallace for his fishing license, which Wallace produced. Davis also asked Wallace for his driver license, because Wallace's fishing license did not include the required driver license number. Davis noted that the name on the driver license, Charles Wallace, did not match the name on the fishing license, Charles Norman. Wallace explained the discrepancy, suggesting that he had merely forgotten to put his last name on the fishing license. Davis then amended the fishing license to include Wallace's last name and instructed him to move his vehicle.

¶ 3 After leaving the immediate area, Davis called dispatch and requested a driver license and warrants check and learned that Wallace's driver license had been suspended and that there was an outstanding warrant for Wallace's arrest. Davis returned to the area only to find that Wallace had moved his car to another no parking zone. Davis then found Wallace and informed him of the warrant and suspended license. Upon hearing this information, Wallace became upset, and told Davis that he would not have driven had he known his license had been suspended.

¶ 4 Davis then told Wallace that he would allow him to move his car to a nearby parking lot to avoid having the vehicle towed. However, based on the change in Wallace's demeanor, Davis asked for permission to search Wallace's vehicle for weapons before Wallace got in. Wallace agreed to the search.

¶ 5 Davis first discovered a soda can that had been converted into marijuana pipe lying upon the floor in front of the vehicle's front passenger seat. Upon seeing the can, Wallace's immediate reaction was to deny knowledge and suggest that his son must have left the can in the car. Davis then told Wallace that it was illegal to possess drug paraphernalia and asked if there were any drugs or other paraphernalia in the vehicle. Wallace said no and told Davis to continue looking. Davis then found a pair of overalls in the backseat, which Wallace admitted were his. As Davis began to remove the overalls, Wallace put a piece of candy into his mouth, fell to the ground, rolled up into a ball, and told Davis that he was not feeling well.

¶ 6 After helping Wallace to his feet, Davis searched the overalls and found a marijuana pipe. Wallace claimed that the pipe was not his and became more upset. Davis subsequently handcuffed Wallace, leaving his hands in front, placed him in the front seat of his patrol vehicle, and then put the can and the pipe into an evidence bag. He then returned to searching Wallace's vehicle where he found another marijuana pipe, which he placed into the evidence bag along with the can and the first pipe. Davis left the bag in his vehicle with Wallace and resumed his search. As he approached Wallace's vehicle, Davis heard the sound of a can being crushed and looked back to his vehicle to see Wallace moving furtively. Davis quickly returned to his vehicle to find Wallace trying to kick the evidence bag underneath the front seat of the police vehicle. Davis informed Wallace that tampering with evidence is a felony, ordered him to stop, and removed the bag from the vehicle. Davis then called for assistance.

¶ 7 While waiting for his back-up to arrive, Davis read Wallace his rights. Wallace responded that he had no rights and that he was going to die. He then briefly settled down. After approximately fifteen minutes, another officer arrived allowing Davis to conclude the search. Finding nothing more,

Davis prepared to transport Wallace to the Daggett County jail where he had asked to be met by a drug recognition expert. Meanwhile, Wallace told Davis that he could not believe he was going to jail for "smoking one joint," that he was going to die, and that the world was going to end. On the way to the county jail, Wallace continued to talk, informing Davis that he was a black belt in karate and that if he were let out of the handcuffs something unpleasant was going to happen. By this time, Davis had stopped the car to investigate the safest method to move Wallace's handcuffed hands from the front of his body to behind his back. Before arriving at a solution, however, Wallace solved the dilemma by stepping through his handcuffed arms, resulting in his hands being behind his back. Davis then resumed driving to the county jail.

¶ 8 On the way to the jail, Wallace experienced several more "mood swings," characterized by his continued verbal and emotional outbursts. Upon arrival at the jail, Davis asked Wallace to volunteer a blood or urine sample. Wallace refused. Wallace was then examined by a drug recognition expert from the Utah Highway Patrol, following which Wallace requested an attorney. Wallace was told that he would be allowed to use the phone as soon as he was processed; however, Wallace refused to cooperate. He was then placed in a cell and told that the officers had requested a search warrant that would allow them to draw blood to test for narcotics in his system.

¶ 9 Davis obtained the search warrant and presented a copy of it to Wallace. Wallace told Davis that he would die before giving the police blood and refused to cooperate any further. Following a protracted attempt to calm Wallace by as many as six uniformed officers, Wallace assumed a "karate posture" and feigned a punch at an officer. During the ensuing confusion, Wallace solidly punched the same officer in the face, which resulted in Wallace being tackled and restrained by five police officers. The technician who had been requested to draw Wallace's blood then entered the cell and successfully drew blood from Wallace's arm.

The sample tested positive for amphetamine, methamphetamine, and a cocaine metabolite.

¶ 10 On the day of trial, Wallace requested a continuance to obtain new counsel. The trial court denied Wallace's request. During a short recess following his motion, but prior to the start of the trial, Wallace left the courthouse and did not return and could not be found. As a result, the trial court issued a warrant for Wallace's arrest and Wallace was tried in absentia. Wallace was convicted of attempted tampering with evidence, assault against a police officer, driving with any measurable controlled substance in the body, unlawful possession of a controlled substance, possession of paraphernalia, driving while license suspended or revoked, and illegal parking. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 Wallace first argues the trial court erred by granting the State's request "for a lesser included instruction on driving with any measurable controlled substance in the body." Because Wallace failed to raise this claim below, we review it for plain error. *See State v. Vargas*, 2001 UT 5, ¶ 39, 20 P.3d 271.

¶ 12 Wallace next argues that his trial counsel rendered ineffective assistance. We review Wallace's claim as a matter of law. *See State v. Maestas*, 1999 UT 32, ¶ 20, 984 P.2d 376.

¶ 13 Third, Wallace argues the trial court erred by denying his motion to continue the trial pending his retention of new counsel. We review a trial court's decision to grant or deny a motion to continue to determine whether the trial court exceeded its permitted range of discretion. *See Holbrook v. Master Prot. Corp.*, 883 P.2d 295, 298–99 (Utah Ct.App.1994) (citing Utah R. Civ. P. 40(b)).

¶ 14 Fourth, Wallace argues that the evidence was insufficient to support his conviction for assaulting a police officer. "In considering an insufficiency-of-evidence claim, we review the evidence and all reasonable inferences that may be drawn from it in a light most favorable to the verdict." *State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993).

¶ 15 Finally, Wallace argues that cumulative trial errors require reversal of the verdict. "[W]e will reverse a conviction [only] if the cumulative effect of several errors undermines this court's confidence that defendant was given a fair trial." *State v. Bryant*, 965 P.2d 539, 550 (Utah Ct.App.1998).

## ANALYSIS

### I. Lesser Included Offense Instruction

¶ 16 Wallace first argues the trial court erred by instructing the jury that driving with any measurable controlled substance in the body, as defined by Utah Code Ann. § 41–6–44.6 (1998), was a lesser included offense of driving under the influence, as defined by Utah Code Ann. § 41–6–44 (1998). Because Wallace failed to raise this claim to the trial court, we review it for plain error. *See Vargas*, 2001 UT 5 at ¶ 39, 20 P.3d 271. To establish plain error, Wallace has "the burden of showing '(I) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant.' " *Dunn*, 850 P.2d at 1208 (citation omitted). However, if we find that an error has occurred, absent some indication that the question is not one of first impression, or some indication that the issue is addressed in existing statutory language, we will not find that the error should have been obvious to the trial court. *See State v. Saunders*, 893 P.2d 584, 588–89 (Utah Ct.App. 1995), *rev'd on other grounds*, 1999 UT 59, 992 P.2d 951; *State v. Braun*, 787 P.2d 1336, 1341 (Utah Ct.App.1990).

¶ 17 Wallace has presented us with a question of first impression, thereby obviating his plain error claim. However, his ineffective assistance of counsel claim requires that we address his argument.

¶ 18 The Utah Supreme Court has explained that "when the prosecution seeks instruction on a proposed lesser included offense, both the legal elements and the actual evidence or inferences needed to demonstrate those elements must *necessarily be included* within the original offense charged." *State v. Baker*, 671 P.2d 152, 156 (Utah 1983). Further, when interpreting a statute that defines an offense, we look " 'to the plain language of the statute . . . and . . . assume[ ] that each term was used advisedly by the [L]egislature.' " *Homeside Lending, Inc. v. Miller*, 2001 UT App 247, ¶ 25, 31 P.3d 607 (first, third, and fourth alterations in original) (quoting *Biddle v. Washington Terrace City*, 1999 UT 110, ¶ 14, 993 P.2d 875).

¶ 19 In pertinent part, Utah Code Ann. § 41–6–44 states, "A person may not operate . . . a vehicle within this state if the person: . . . (ii) is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle." *Id.* § 41–6–44(2)(a)(ii). Utah Code Ann. § 41–6–44.6 states, "*In cases not amounting to a violation of Section 41–6–44,* a person may not operate . . . a motor vehicle within this state if the person has any measurable controlled substance or metabolite of a controlled substance in the person's body." *Id.* § 41–6–44.6(2) (emphasis added).

¶ 20 A plain reading of section 41–6–44.6, primarily the section's first sentence: "In cases not amounting to a violation of Section 41–6–44," *id.*, leads us to conclude that the Legislature intended section 41–6–44.6 to be read in reference to and as part of the DUI statute. The "legal elements and the actual evidence" needed to convict an individual of driving with a measurable controlled substance in the body are necessarily included within the DUI statute. *See Baker*, 671 P.2d at 156. For example, an individual who operates a motor vehicle in a safe manner while some small amount of a controlled substance is in their system may not be guilty of DUI; however, if the amount of controlled substance is "measurable," that person may still be charged and convicted under section 41–6–44.6. *See* Utah Code Ann. § 41–6–44.6. We therefore conclude that the trial court properly instructed the jury that driving with any measurable amount of a controlled substance in the body is an offense necessarily included within our DUI statute.

### II. Ineffective Assistance of Counsel

¶ 21 Wallace next argues that he received ineffective assistance because trial counsel

failed to (1) object to the State's request for a lesser included jury instruction on driving with any measurable controlled substance in the body; (2) file a motion to suppress the results of Wallace's blood test, which the State obtained through a search warrant; (3) seek a dismissal of the charge of assault against a police officer; and (4) seek a continuance because the State had not complied with the notice requirements of Utah Code Ann. § 77–17–13 (1999) regarding expert witnesses.

¶ 22 "To prevail on a claim of ineffective assistance of counsel, [Wallace] must establish (1) that his trial counsel's performance was 'deficient,' and (2) that he was 'prejudiced' by the ineffective assistance." *State v. Visser*, 2001 UT App 215,¶ 14, 31 P.3d 584 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "In determining whether counsel's performance was deficient, this court ... 'presume[s] that counsel has rendered adequate assistance.' " *State v. Parker*, 2000 UT 51,¶ 10, 4 P.3d 778 (citation omitted). Further, "failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *State v. Whittle*, 1999 UT 96,¶ 34, 989 P.2d 52 (quotations and citations omitted). With this in mind, we review Wallace's specific claims.

### A. The Lesser Included Offense Instruction

¶ 23 Wallace argues that his trial counsel rendered ineffective assistance when he failed to "object to the State's lesser included instruction on driving with any measurable controlled substance in the body." Having concluded in the previous section that driving with any measurable controlled substance in the body is necessarily included within the DUI statute, trial counsel's failure to object to the instruction does not amount to ineffective assistance. *See Whittle*, 1999 UT 96 at ¶ 34, 989 P.2d 52. Wallace's first claim therefore fails.

### B. The Search Warrant for the Blood Draw

¶ 24 Wallace next argues that his trial counsel was ineffective for failing to file a motion to suppress the results of Wallace's blood test. Specifically, Wallace argues that the "search warrant used to sample Wallace's blood was facially deficient because it failed to describe with particularity the thing to be seized." Wallace takes exception to a pre-printed addendum attached to Davis's affidavit that states Davis is requesting a urine sample. Wallace claims that the discrepancy in the addendum fatally taints the search warrant because the affidavit does not describe with particularity the subject of the search. We disagree.[1]

¶ 25 Utah Code Ann. § 77–23–201 (1999) states that a search warrant shall "describ[e] with particularity the thing ... or person to be searched." Here, the search warrant clearly stated that it was issued for the purpose of taking a blood sample from Wallace. Further, Utah Code Ann. § 77–23–203(1) (1999) states "A search warrant shall not issue except upon probable cause supported by oath or affirmation particularly describing the person ... to be searched." *Id.* Along with providing the magistrate with the reasons supporting his request for a warrant, Davis's affidavit described the "property or evidence" as a "blood sample," and identified Wallace as the person from whom the sample was to be drawn. Moreover, the magistrate reviewed Davis's affidavit and concluded that probable cause did exist to grant Davis a search warrant to obtain a blood sample from Wallace.

¶ 26 A minor inconsistency in an addendum to the accompanying affidavit, which does not seriously undermine the information underlying the probable cause determination, does not prevent a magistrate from granting an otherwise proper search warrant. We therefore conclude that the blood draw was valid. Accordingly, Wallace's second claim that trial counsel was ineffective also fails.

---

1. We note that Wallace does not argue that the search warrant was not supported by probable cause.

## C. Assault Against a Police Officer

¶ 27 Wallace next claims that his trial counsel rendered ineffective assistance because he failed to seek dismissal of the assaulting a police officer charge. Wallace argues that he exercised a right to self-defense to prevent execution of an invalid search warrant, and that counsel's failure to seek dismissal of the charge based on his right to self-defense amounts to ineffective assistance. Trial counsel's decision to forgo futile acts does not amount to ineffective assistance. *See Whittle,* 1999 UT 96 at ¶ 34, 989 P.2d 52. Because there is no common law right to resist arrest in Utah, if a right to resist exists it must be firmly rooted within the "the specific code section" under which a defendant is eventually convicted. *State v. Gardiner,* 814 P.2d 568, 574 (Utah 1991). Absent such a statutory right, any effort to seek dismissal based on the right to resist would be futile.

¶ 28 Utah Code Ann. § 76–5–102.4(1) (1999), states "Any person who assaults a peace officer, with knowledge that he is a peace officer, and when the peace officer is acting within the scope of his authority as a peace officer, is guilty of a class A misdemeanor." *Id.* The evidence at trial showed that Wallace assaulted a twenty-one year veteran of the Daggett County Sheriff's Department, who was on duty and in uniform when Wallace struck him. Moreover, the assault took place only after the deputy had informed Wallace that he had a valid search warrant to take a blood sample. We therefore conclude that the officer was acting within the "scope of his authority as a peace officer," *id.,* when Wallace committed the assault.

¶ 29 Additionally, having determined that the search warrant was valid, and that the statute does not contain language that would create a right to resist arrest, we need not address this claim further. Trial counsel's failure to seek dismissal of the assault charge was not ineffective assistance, and Wallace's third claim for ineffective assistance also fails.

## D. Trial Counsel's Failure to Seek a Continuance Under Utah Code Ann. § 77–17–13

¶ 30 Wallace's final argument involving his ineffective assistance of counsel claim is that his trial counsel's failure to request a continuance amounts to ineffective assistance because "the prosecutor had failed to comply with the notice requirements of Utah Code Ann. § 77–17–13 (1999)." Specifically, Wallace argues that the State failed to provide him with the curriculum vitae of one of its expert witnesses, and only provided the curriculum vitae of its other expert witness the day before trial. Section 77–17–13, in pertinent part, states:

(1) (a) If the prosecution ... intends to call any expert to testify *in a felony case* at trial, ... the party ... shall give notice to the opposing party as soon as practicable but not less than 30 days before trial....

....

(4) (a) If the ... prosecution fails to meet the requirements of this section, the opposing party shall be entitled to a continuance of the trial ... to allow preparation to meet the testimony.

*Id.* (emphasis added).

¶ 31 We note that " 'we give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them.' " *State v. Hall,* 946 P.2d 712, 720 (Utah Ct. App.1997) (quoting *State v. Crosby,* 927 P.2d 638, 644 (Utah 1996)). Here, the trial court inquired as to whether trial counsel was in need of a continuance to prepare for the State's experts. The following exchange occurred in chambers:

The Court: Okay. So that I can maybe make it clear what you are doing here, I'm asking in your professional opinion when you would be ready [to go forward]. If you are ready ... that's fine. We'll go ahead. Are you, in your professional opinion, ready to address those state witnesses?

Trial Counsel: Yeah. I have had those in several cases in the past. And I have never got anybody else to independently

test substances that were suspected of either being illegal drugs or containing illegal drugs.

The Court: And you have had notice of the results of the test[?]

Trial Counsel: That's right.

¶ 32 Based on this conversation, we are satisfied that trial counsel's decision to forgo a continuance was a reasonable tactical decision. *See id.* Trial counsel notified the court that he was ready to proceed, and that he had prior experience dealing with these types of witnesses as well as advance notice of the test results. Accordingly, trial counsel made a tactical decision to go forward. We conclude that trial counsel's decision not to delay the proceedings, which at the time of trial had been ongoing for more than a year, was not unreasonable and did not amount to ineffective assistance.[2]

¶ 33 Wallace has failed to demonstrate that trial counsel's assistance was ineffective. We therefore reject his ineffective assistance of counsel claim.

### III. Request for a Continuance to Obtain New Counsel

■■■ ¶ 34 Wallace next argues that the trial court's inquiry into his expressed dissatisfaction with his trial counsel was insufficient and that the trial court erred in denying his motion for a continuance. "[W]hen a defendant expresses dissatisfaction with counsel, a trial court 'must make some reasonable, non-suggestive effort to determine the nature of the defendant's complaints.' " *State v. Lovell,* 1999 UT 40, ¶ 27, 984 P.2d 382 (quoting *State v. Pursifell,* 746 P.2d 270, 273 (Utah Ct.App.1987)). Only if the defendant demonstrates the existence of good cause, such as a conflict of interest or an irreconcilable conflict that would lead to an unjust verdict, is the trial court required to grant a defendant's motion for substitution of trial counsel. *See id.* at ¶ 31.

¶ 35 Here, on the day of trial and prior to the jury being empaneled, Wallace made the following statement to the trial court:

I would like to—I've got a good job now. And I would like to get me an attorney. I feel that I haven't been represented right. And just that some of my rights have been violated here. And I need somebody who will state that issue stronger than what [trial counsel] has. (Inaudible) of the court, not just from the preliminary hearing, but all the originals from the statements, the police and the fish and game wildlife officer made, because I found in my copies that some of the things they are saying vary to the point where I think that charges should be dropped, because they do vary a lot. And I have never been explained, never been told that my rights weren't violated other than, like I said, just took from my knowledge of growing up and learning the rights of Americans in this country. I feel that my rights have been violated. And I have never been told any different than that. So, like I said, I just—I need a little more time to get me an attorney with the money I got—I'm getting saved up. And, you know, I'll be here. And I'll go to a jury trial. That's an issue to me because of the way (inaudible) things were thrown at me. And just like in the jail, I didn't ask to get beat up. I got beaten up. And that's an issue to me, because I didn't hit no police officer. And I'm willing to prove that in court. But I need someone who will stand up to prove that. I don't feel like I have been represented right by [trial counsel].

Wallace's trial counsel responded:

Yes. I realize that I'm appointed to represent you. Some people (inaudible) believe that when that happens they are getting a second rate job. I'm not going to argue about what he said here, but I don't agree with a lot about what he said. He's just been very poor at communicating with me from day one. I tried to explain things to him. And if he doesn't like what I say, why, he just [doesn't] accept it. I haven't seen or talked to him here for at least six weeks. I have sent letters to him. And he's basically ignored me. And so my

---

2. We also note that there may be an issue surrounding the applicability of Utah Code Ann. § 77–17–13 (1999) to the prosecution of non-felony offenses. However, because neither party raised this issue on appeal, we defer this discussion for a more appropriate setting.

preparation today has been, essentially, without any input from him. A year or so ago, he did come and see me. And, generally, we talked about some things, but we haven't discussed anything since. I really don't care.[3] It's been several months ago. He didn't like some [of the] things that happened or hadn't happened. And I invited him—at that time, I said, you are free to go get another attorney. And that's been quite awhile ago. There were settlement offers made. I didn't really put any pressure on him other than a recommendation. You know, I didn't tell him he had to do anything. I just recommended it based on the charges and the settlement. I think he was offended at that. But I think part of my job is to look at a case and assess it and tell people where I think they are at. If they don't like it, why, I guess they don't like it. But I still think that's part of my job. You know, a lot of people don't know or have any idea where they are at. If I have offended him, I guess I apologize for that. But I think it's just been—just been no real communication since I started representing him.

At that point, the court asked for input from the prosecuting attorney, who stated that the trial court had informed Wallace of the trial date two months earlier and therefore, Wallace had been presented with ample opportunity to retain private counsel. Wallace then stated

I also feel that I have been discriminated against because of what was told to the people up in Washington by [the] prosecuting attorney. She got together with the Washington prosecuting attorney and told them that I had been convicted of this crime. And because of that, I have never been convicted of a crime ever in my life other than up in Washington. And when they sentenced me, I had qualified for all their drug treatment programs and a 90 day evaluation. And she, the prosecutor up there, stood up, told the court that I had been prosecuted for a crime here in— as a police officer beater, or as an assault

on an officer and, also, told them that I wasn't taking care of my court here in Manila. That the prosecutor here had told her I wasn't taking care of my court dates, I wasn't showing up to court. And I have tried nothing but. In, what, about 20 different times of being here, in two and-a-half years, two years, I have done nothing but try to be here. I have only missed two, one from a broken car and another one I can't remember why I had missed. But they put a warrant out for my arrest. But I come in, took care of that. And the prosecutor up in Washington, or the judge up in Washington, because of what was told her by your prosecuting attorney, harshened my sentence from 90 days to three years in the state penitentiary in Washington. If that's not being convicted for a crime that you never even been to court on, been proven in court that you are guilty of, there is some discrimination there, you know. And I feel that's been done to me.

Wallace's attorney concluded the exchange, informing the court:

I just have one observation. And I guess I didn't say anything (inaudible), but I think to cooperate with an attorney I think he would probably be better off than he will be with me, because (inaudible) that's the only observation I can make from my perspective. If he were to get some attorney that he could cooperate with, he would probably be, maybe, better prepared than I am.

After considering Wallace's request the court concluded:

The matter will go forward today. The reason I do that is because, I might indicate, I went over this file very carefully last time he was in court. This appears to be a pattern of things that happen. When the matter comes before the court for disposition, we have a change in situation. And that's happened twice before, as I recall. This would now be the third time. Your obligation has been to cooperate with

---

**3.** Read in light of the entire record, this comment is not as concerning as it might be on its face. Having reviewed the entire record, we conclude that Wallace's trial counsel was simply informing the trial court that he had no objection to the appointment of substitute counsel, not that he had no concern for Wallace or Wallace's situation.

your attorney. And many of the issues that you have brought up are, frankly, just aren't relevant to the issue of whether the matter should be continued.

. . . .

The obligation that you have is to keep in touch with [trial counsel] and to get ready for this matter. [Trial counsel], I believe, based upon what I have heard today, and also what I have observed, has at all times been willing to do as you said and to help and assist you with the conflict. If there is a conflict, it arises almost entirely because you have chosen not to address this issue and not to deal with [trial counsel]. Based upon all of that—and I'm aware of what you said, we have a jury here, I think that is a consideration, and witnesses, and I think that the court ought to take that into consideration. But that is not driving on my decision. I think the basis for my decision, primarily, is that this has been something that's been kind of a pattern, and you just entirely failed to cooperate. . . . And I don't have any reason to think that things will get better. . . . [B]ased upon everything I have before me, it's clear in my mind that justice would not be served considering the interest of both parties and the interest of the public in continuing this matter.

¶ 36 On the record before us, we cannot conclude that the trial court violated its duty to make a reasonable, non-suggestive effort to determine the nature of Wallace's complaint. Nor are we convinced that Wallace articulated sufficient reason to prompt the trial court to appoint substitute counsel.

 ¶ 37 We further conclude that the trial court properly denied Wallace's motion to continue. In *Layton City v. Longcrier,* 943 P.2d 655 (Utah Ct.App.1997), we adopted a five-part test to determine whether a trial court reasonably denied a defendant additional time to retain private counsel. *See id.* at 659–61. The factors articulated include: [1] whether other continuances have been requested and granted; [2] the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court;

[3] whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; [4] whether the defendant contributed to the circumstance which gives rise to the request for continuance; . . . [and 5] whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature.

*Id.* (citation omitted) (alterations in original). However, we have also concluded that unless a defendant shows that denial of the continuance had a material affect on the outcome of the trial, thereby demonstrating prejudice, the trial court's decision would not constitute an abuse of discretion. *See id.* at 660. A defendant who "merely asserts prejudice without making any tangible showing that the result would have been different" has failed to meet his burden. *Id.* at 661.

¶ 38 Here, because Wallace makes no tangible effort to demonstrate that the result would have been different had the trial court granted his continuance, he has not shown that he was prejudiced. Assuming arguendo that Wallace has satisfied the first four *Longcrier* factors, Wallace has not demonstrated prejudice. We therefore must conclude that the trial court did not exceed its permitted range of discretion.

### IV. Sufficiency of Evidence

 ¶ 39 Wallace next argues that the evidence presented at trial was insufficient to sustain his conviction for assaulting a police officer. Specifically, Wallace contends that the State failed to prove that Wallace assaulted an officer who was "acting under the scope of his authority" when he approached Wallace and requested that he submit to a blood draw.[4] Wallace concedes, however, that "if the [search] warrant was valid . . . [the officer] was acting within the scope of his authority." Having concluded that the search warrant was valid, Wallace's claim therefore fails.

### V. Cumulative Error

 ¶ 40 Finally, Wallace argues that the errors committed by the trial court and his

4. Utah Code Ann. § 76–5–102.4 (1999).

trial counsel, even if construed to be harmless individually, were cumulatively harmful. Under the cumulative error doctrine, "we will reverse a conviction if the cumulative effect of several errors undermines this court's confidence that defendant was given a fair trial." *Bryant*, 965 P.2d at 550. Because we have determined that no error has occurred, we conclude that Wallace was not deprived of a fair trial. We therefore reject his cumulative error claim.

## CONCLUSION

¶ 41 In sum, we conclude that the trial court did not err by instructing the jury on the lesser included offense of driving with a measurable controlled substance in the body. Next, we conclude that Wallace was not denied effective assistance of counsel. We also conclude that sufficient evidence was presented at trial to sustain the jury's verdict convicting Wallace of assaulting a police officer.

¶ 42 We further conclude that the trial court did not exceed its permitted range of discretion by denying Wallace's request for a continuance. The record shows that the trial court conducted a reasonable inquiry into Wallace's dissatisfaction with his trial counsel, and that, based upon that inquiry, the trial court reached a reasonable conclusion. Finally, having determined that no error occurred, we conclude that Wallace's cumulative error argument necessarily fails.

¶ 43 Wallace's convictions are therefore affirmed.

¶ 44 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and GREGORY K. ORME, Judge.