STATE of Utah, Plaintiff and Appellee,

v.

Frank Gene POWELL, Defendant and Appellant.

No. 920206.

Supreme Court of Utah.

April 8, 1994.

R. Paul Van Dam, Atty. Gen., Marian Decker, Asst. Atty. Gen., Salt Lake City, for plaintiff.

Michael D. Esplin, Provo, for defendant.

HOWE, Justice:

Defendant Frank Gene Powell appeals from a conviction of second degree murder under Utah Code Ann. § 76–5–203 (1990).[1] He contends that (1) the depraved indifference murder jury instruction was erroneous; (2) the trial court should not have mandated a particular order of deliberation by the jury; (3) his constitutional right to a unanimous verdict was violated; (4) there was insufficient evidence to convict him; and (5) he should have been given the statutory sentence for manslaughter, which is a lesser included offense.

## FACTS

We state the version of the facts most favorable to the jury's verdict. On the night of November 28, 1987, Powell went to a birthday/keg party at a residence in Pleasant Grove, Utah. The victim, Glen Candland, was also present, as were thirty or forty others. During the evening, Powell and Candland continued a previous dispute over who had the best pickup truck. The argument included minor bumps and brief name-calling, which may have escalated to the point where Candland struck Powell in the face. The two men also commented to others attending the party about a possible fight. The host of the party intervened in an attempt to keep the party peaceful. At one point, Powell engaged in a fist fight with Tracy Davis, a friend of Candland. One of Powell's friends, Shanna LeFevre, witnessed Powell pull the spark plugs from Candland's truck, which was parked in the driveway of the home.

Sometime after midnight, as Powell, Le-Fevre, and Tommy Kaufman were leaving the party, Powell and Candland had another brief confrontation outside the house. The two continued name-calling as Powell

---

1. Following this verdict, the statute was amended in 1991, deleting the second degree murder classification and making the crime simply "murder." Utah Code Ann. § 76–5–203 (Supp. 1993).

reached his truck, which he had parked across the street in a bank's parking lot. Candland picked up a jack from the back of his truck, and Kaufman picked up a shovel from the back of Powell's truck. Both weapons were eventually put aside without being used. Candland and Powell stared at one another as they stood in the parking lot. Powell, LeFevre, and Kaufman then climbed into Powell's pickup truck, with LeFevre sitting between the two men.

Todd Hamilton, a friend of Candland, was present and overheard something but was unable to determine exactly what was said. Apparently, Candland reacted to this statement and immediately approached the truck and began pounding on the driver's side window and yelling at Powell to come out. Candland pulled the antenna off the vehicle. Powell reacted by shifting into reverse and squealing his tires for approximately fifteen feet. As Candland began walking toward Powell's stopped vehicle, Powell pulled forward at approximately fifteen to twenty miles per hour and again squealed his tires. Candland and Hamilton then began to walk back to the party. Powell drove his truck into the street, circled around, and reentered the parking lot. Hamilton heard the squealing tires and yelled "look out" as he jumped into some nearby bushes. Powell's truck hit Candland and ran over him. The medical examiner estimated the truck's speed at twenty to thirty-five miles per hour.

Nickie Talbot, who had left the party shortly after Powell, was using an outdoor pay phone at a convenience store located north of the bank's parking lot. She heard an engine roar and looked south to see Powell's truck. As Talbot finished using the phone and began to walk away from the store, her boyfriend warned her to get out of the way and then pulled her out of the truck's path. Talbot testified that Powell had not turned on the truck's headlights and that he made no effort to slow down before striking Candland.

LeFevre, sitting next to Powell inside the cab of the truck, testified that just moments after Candland pounded on the truck, Powell stated that he was going to "get him." Le-Fevre estimated the truck's speed between twenty and twenty-five miles per hour. She recalled that she had no trouble seeing Candland or Hamilton as the truck reentered the parking lot. She added that Candland turned sideways in an attempt to escape and that Powell may have momentarily lifted his foot off the gas pedal after hitting Candland but that he made no attempt to brake or to swerve to avoid hitting him. After striking the victim, Powell continued through the parking lot and left by an east exit.

Powell was charged with criminal homicide, and a jury convicted him of second degree murder.

## ANALYSIS

### I.  Jury Instructions

■ Powell did not object to three jury instructions that he now assigns as being erroneous. We may review jury instructions or the lack thereof for error in the absence of an objection only "to avoid a manifest injustice." Utah R.Crim.P. 19(c). See *State v. Verde*, 770 P.2d 116, 121–22 (Utah 1989), where we considered the meaning of "manifest injustice" and concluded that "in most circumstances, the term 'manifest injustice' is synonymous with the 'plain error' standard expressly provided in Utah Rule of Evidence 103(d) and elaborated upon in [*State v. Eldredge*, 773 P.2d 29 (Utah 1989)]." But see *State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987), where this court declined to review an instruction where defense counsel did not remain silent but actively represented that she had read it and had no objection.

### A. Instruction on Depraved Indifference Murder

Jury instruction 5 was an elements instruction on second degree murder. That instruction states in part:

The essential elements of the crime of Criminal Homicide, Murder in the Second Degree, as charged in the Information are as follows:

1. That the defendant, Frank Gene Powell, caused the death of Glen Harry Candland.

2. That he did so knowingly or intentionally, or,

3. That he did so while knowingly engaged in conduct which created a grave risk of death to another (Glen Harry Candland) and acted under circumstances that evidenced a depraved indifference to human life.

This instruction is pursuant to Utah Code Ann. § 76–5–203(1)(a) and (c).

Powell first attacks instruction 8, which defined the term "depraved indifference." This instruction states:

The term "depraved indifference" is not specifically defined by statute. Thus, the phrase "depraved indifference" is a concept which must be left largely to the experience and common sense of the jury.

To engage in conduct with a "depraved indifference to human life," a person must do more than act "recklessly," but he need not have as his conscious objective or desire to cause the result; *nor, need he be aware that his conduct is reasonably certain to cause the result.*

Rather, the greatness of the risk which the defendant's actions create and the lack of justification for the creation of the risk is the test to be applied in determining whether the defendant's conduct evidences a "depraved indifference to human life."

In determining whether any defendant acted with depraved indifference, the circumstances under which the defendant acted are to be viewed objectively from the standpoint of a reasonable person and not subjectively from the state of such defendant's mind.

(Emphasis added.) Powell contends that this instruction erroneously included the emphasized phrase that he need not be aware that his conduct was reasonably certain to cause the result. He argues that this language is contrary to this court's prior decisions concerning the term "depraved indifference to human life."

In *State v. Standiford*, 769 P.2d 254 (Utah 1988), we reviewed a very similar depraved indifference jury instruction. We disapproved of the first paragraph of the instruction because common experience and common sense do not convey the statutory sense of the term "depraved indifference" nor "would [the jury] impart a reasonable uniform meaning to that term." *Id.* at 261–62. Additionally, we were critical of paragraph 2 of the instruction because it did not state the gravity or degree of risk to human life that the defendant's conduct must knowingly create.

■ We set out five factors to be included in jury instructions concerning depraved indifference murder:

In sum, the jury should be instructed that to convict of depraved murder it must find (1) that the defendant acted knowingly (2) in creating a grave risk of death, (3) that the defendant knew the risk of death was grave, (4) which means a highly likely probability of death, and (5) that the conduct evidenced an utter callousness and indifference toward human life.

*Id.* at 264.

We concluded that the trial court had made clear in its instructions that the defendant had to act knowingly in creating a grave risk of death. We further held that "while the gravity of the risk of death was not explained with quite the precision set out here, the instructions, nevertheless, were not essentially wrong, and we do not believe the jury was misled." *Id.* We affirmed the defendant's conviction of second degree murder.

Instruction 8 in the instant case is nearly identical to the instruction given in *Standiford* that we disapproved in part and found wanting in another part. The trial court did not follow our direction in *Standiford* to instruct the jury that to convict of depraved murder, it must find the five elements enumerated above.

■ Defendant's counsel made no objection to instruction 8, nor did he submit to the trial court a requested instruction which would have remedied any confusion or incompleteness in the instructions that were given. The question then arises whether there is here a "manifest injustice," Utah R.Crim.P. 19(c), or "plain error," Utah R.Evid. 103(d). In *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993), we reiterated:

[T]o establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*Id.* We stated that if any one of those requirements is not met, plain error is not established. *Id.* at 1209. The "obviousness" prong is related to the "harmfulness" prong. *State v. Eldredge,* 773 P.2d 29, 35 n. 8 (Utah 1989). "[T]he more harmful an error is, the more likely an appellate court is to conclude that it was objectively obvious, because a high degree of harmfulness might be expected to attract a trial court's attention." *Id.*

■ We conclude that plain error is not found here because while in *Standiford* we disapproved of the instruction in part and found it inadequate in another part, the error did not rise to the level of reversible error. In view of that fact, we cannot tag the trial court with having committed plain error. However, we reiterate our direction in *Standiford* that the instruction not be used but that the jury be instructed more adequately as set forth in that case.

### B. Order of Deliberation

The trial court instructed the jury concerning three alternatives under criminal homicide: second degree murder, manslaughter, and negligent homicide. Jury instruction 6 stated in part:

If you do not find the defendant guilty of Criminal Homicide, Murder in the Second Degree, a First Degree Felony, you should consider whether he is guilty of the lesser-included offense of Criminal Homicide, Manslaughter.

Jury instruction 7 stated in part:

If you do not find the defendant guilty of Criminal Homicide, Murder in the Second Degree, a First Degree Felony, or the lesser-included offense of Criminal Homicide, Manslaughter, you should consider whether he is guilty of a further lesser-included offense of Criminal Homicide, Negligent Homicide.

In addition, the trial judge orally instructed the jury concerning the special verdict form he gave them and the manner in which they should proceed to deliberate. The court stated in part:

If you find him not guilty [of Murder in the Second Degree,] however, then we go down to the next step. If you find the defendant not guilty of Criminal Homicide, Murder in the Second Degree, you should find if the defendant is blank [sic] guilty of the lesser included offense of Criminal Homicide, Manslaughter. That is a lesser included offense to the one of Murder in the Second Degree. If you unanimously find the defendant guilty of this lesser included offense, then you would check that. If you find the defendant is not guilty of this lesser included charge, then you would check the blank between the parenthesis here, the brackets not guilty of the lesser included offense of Criminal Homicide, Manslaughter. If you check that not guilty then you will go on down to the next set of lesser included offense.

This reads if you find the defendant not guilty of the lesser included offense of Criminal Homicide, Manslaughter, you should find and then the block [sic] here is guilty of the lesser included offense of Criminal Homicide [sic] Negligent Homicide or not guilty of the lesser included offense of Criminal Homicide, Negligent Homicide.

Powell contends that with these instructions, the trial court trespassed on the province of the jury and improperly mandated a specific order of deliberation.

■ We dealt with this same issue in *State v. Gardner,* 789 P.2d 273 (Utah 1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). We held that the trial court is not to mandate a specific order of deliberation to the jury concerning lesser included offenses; rather, such instruction should be given by way of suggestion and recommendation. *Id.* 789 P.2d at 284. Specifically, we determined that a trial court is to avoid instructing the jury

[t]hat they *must* find the defendant not guilty of the charged offense before they may consider lesser included offenses. Instead, they may be instructed that they *should* consider the lesser included offenses if they do not find the defendant guilty of the charged offense. While the difference in wording is subtle, it avoids any possible misunderstanding that the jury must, by a unanimous vote, acquit the defendant on the charged offense before it may consider the lesser included offenses.

*Id.* (emphasis added).

In the present case, both the written and the oral instructions concerning the order of deliberation complied with *Gardner.* Each instruction employed the word "should" rather than "must." The trial court did not specifically direct the jury to acquit on the charged crime before proceeding to the lesser included crimes. We do not believe that a juror would have felt compelled to acquit as to the second degree murder charge before considering the lesser included offenses. Read as a whole, we construe these instructions as suggesting to the jury a logical approach to the three criminal homicide alternatives rather than as commanding an absolute progression through the possible options.

### C. Jury Unanimity Requirement

Powell argues that his constitutional right to a unanimous jury verdict was violated. Utah Const. art. I, § 10. He asserts that the trial court improperly failed to instruct the jury that it must be unanimous in its determination as to which of the alternative theories of second degree murder had been proved beyond a reasonable doubt.

■ As to this issue, *State v. Russell,* 733 P.2d 162 (Utah 1987), is controlling. In that case, the defendant shot two of his neighbors during a discussion in which he accused their son of taking indecent liberties with his five-year-old daughter. He was convicted of second degree murder under Utah Code Ann. § 76-5-203. A jury instruction listed the three separate alternative elements of second degree murder: (1) intentionally or knowingly causing the death of another; (2) causing death while intending to cause serious bodily injury; or (3) depraved indifference murder. *Id.* at 164. We concluded that the right to a unanimous jury verdict did not include a right to a unanimous decision as to the particular alternative under the single crime of second degree murder:

> The decisions are virtually unanimous that a defendant is not entitled to a unanimous verdict on the precise manner in which the crime was committed, or by which of several alternative methods or modes, or under which interpretation of the evidence so long as there is substantial evidence to support each of the methods, modes, or manners charged.

*Id.* at 165.

■ In the present case, the State charged two of the first three alternatives under second degree murder: (1) that Powell acted knowingly or intentionally; or (2) that Powell acted under circumstances that evidenced a depraved indifference to human life. As in *Russell,* we now conclude that it was not error for the trial court to omit an instruction requiring the jury to unanimously agree on one of the two alternatives.

### II. Sufficiency of Evidence

■ Powell contends that there is insufficient evidence to sustain his conviction of second degree murder. Asserting that his acts amounted to mere recklessness, he argues that his conduct is better characterized under manslaughter or even negligent homicide. Viewing the evidence and all reasonable inferences drawn therefrom in a light most favorable to the jury verdict, we disagree. *Gardner,* 789 P.2d at 285.

First, several witnesses testified of the heated exchanges between Powell and Candland during the evening of the tragedy. Second, LeFevre witnessed Powell vandalize the victim's truck just before leaving the party. Third, Powell initially exited the parking lot, circled around in the street, and reentered toward Candland even though several alternative outlets were available. Fourth, LeFevre testified that Powell said he was going to "get him" just before striking Candland. Fifth, three eyewitnesses, including one who was sitting next to Powell in the truck, all

testified that Powell made no attempt to brake or avoid hitting Candland. Investigating officers concluded that the physical evidence corroborated this testimony. Sixth, Powell fled the scene and showed little remorse afterward. Finally, one witness testified that Powell later bragged about the killing in jail.

 To overturn a verdict based on insufficient evidence, we must find that the proof is so lacking that no reasonable jury could possibly find defendant guilty beyond a reasonable doubt. *State v. Lamm,* 606 P.2d 229, 231 (Utah 1980). Powell has the heavy burden of establishing that the evidence is so inconclusive or insubstantial that reasonable minds must have entertained a reasonable doubt that he committed the crime. *State v. Kerekes,* 622 P.2d 1161, 1168 (Utah 1980). He has not met this burden. Considering the evidence, we find that it was reasonable for a jury to reject Powell's argument that his actions were reckless. *See State v. Russell,* 733 P.2d 162, 169 (Utah 1987). The gravamen of depraved indifference murder is Powell's cognizance that his conduct or the circumstances surrounding it created a grave risk of death to another. *State v. Bolsinger,* 699 P.2d 1214, 1219 (Utah 1985). It would certainly be reasonable for a jury to find the requisite intent and actions for depraved indifference murder from the foregoing evidence.

### III. Sentencing

Powell asserts that there is no meaningful distinction between the "substantial and unjustifiable risk" of death required for manslaughter and the "grave risk of death" required for depraved indifference murder. He concludes that because there is no difference, he should have been sentenced to the lesser penalty for manslaughter. He relies on *State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1966), for that proposition.

Powell raised no objection to his sentence when it was imposed and did not request that the trial court reduce his conviction to the "next lower category of offense and impose sentence accordingly" as permitted under Utah Code Ann. § 76-3-402(1). He was given the sentence mandated by statute for the offense of which he was convicted. Contrary to his assertion, this is not an illegal sentence which can be corrected at any time under rule 22(e) of the Utah Rules of Criminal Procedure.

The conviction and sentence are affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM, JJ., concur.

HALL, J., sat but retired before he could act.