2013 UT App 238

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
BRAD R. RICKS,
Defendant and Appellant.

Opinion
No. 20111115-CA
Filed October 18, 2013

Second District Court, Ogden Department
The Honorable Michael D. Lyon
No. 091900839

Randall W. Richards and Brittany R. Brown,
Attorneys for Appellant
John E. Swallow and Brett J. DelPorto, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

VOROS, Judge:

¶1 Defendant Brad R. Ricks and his friend Maurice Lee were drinking together one night in 2009. They got into what Ricks later called "a pissing match about who had the balls big enough to do something." At Lee's urging, Ricks fetched his semiautomatic pistol from the bedroom, placed it against Lee's forehead, and pulled the trigger. Ricks later testified that he expected to hear a clicking sound. Instead, the gun discharged. The principal question

on appeal is whether the facts established at trial are sufficient to support the jury's verdict of depraved indifference murder. We hold that they are.

BACKGROUND[1]

¶2     Ricks knew the gun's magazine held ammunition. But while walking down a darkened hallway, he "managed to get into the light" and pulled the gun's slide back part way to confirm that no shell was in the chamber. Though he believed he had pulled the slide back only far enough to look inside, he in fact had pulled it back far enough to chamber a round once the slide was released. Placing the weapon to Lee's forehead, Ricks said, "Well, this one will make you flinch." Lee replied, "You don't have the balls," and repeatedly told Ricks, "Do it." Ricks finally pulled the trigger, killing Lee.

¶3     After shooting Lee, Ricks called 911 and told the dispatcher, "I just shot a man in his head. . . . He's dead. . . . He said, 'Shoot me,' and I did." When police officers arrived, Ricks told them, "Well, my neighbor is in the house. He kept telling me to shoot him, so I did." At trial, Ricks testified that he was a close friend of Lee and that he had known him for roughly two years. Ricks also testified that despite knowing that bullets were in the magazine and the magazine was in the gun, he believed the gun was unloaded because he "did not see [a round] in the chamber when [he] pulled the slide back." Ricks testified that he did not mean to kill Lee. However, Ricks also testified that he knew he was

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citations and internal quotation marks omitted).

intoxicated and that he should not have pulled his gun out or placed it against Lee's head.

¶4    Ricks was convicted of murder, a first-degree felony. *See* Utah Code Ann. § 76-5-203(2) (LexisNexis Supp. 2008).[2] He was sentenced to a prison term of sixteen years to life.[3]

ISSUES AND STANDARDS OF REVIEW

¶5    Ricks contends that the evidence was insufficient to convict him of murder. In determining whether evidence was insufficient, we "view[] the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict." *State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346. If, in that light, "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted," we will conclude that the evidence was indeed insufficient. *Id.* (citation and internal quotation marks omitted).

¶6    Ricks also contends that he received ineffective assistance of counsel at trial. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law, which we review for correctness." *State v. Fowers*, 2011 UT App 383, ¶ 15, 265 P.3d 832 (citation and internal quotation marks omitted).

---

2. We refer to the version of the Utah Code in effect at the time of the events giving rise to this case.

3. Ricks moved the trial court to enter judgment for the next lower degree of offense and to impose sentence accordingly on the ground that a murder conviction was "unduly harsh." *See* Utah Code Ann. § 76-3-402(1). The court denied the motion on the ground that a conviction for murder may not be reduced under section 402. *See id.* § 76-3-406(2).

ANALYSIS

I. Sufficiency of the Evidence

¶7     Ricks contends that the evidence at trial was insufficient to support his murder conviction. Specifically, he argues that the State "failed to carry its burden in attempting to establish that [he] did more than just act recklessly."

¶8     When reviewing the sufficiency of the evidence, appellate courts ordinarily "may not reassess credibility or reweigh the evidence, but must resolve conflicts in the evidence in favor of the jury verdict." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). However, "[a] guilty verdict is not legally valid if it is based solely on inferences that give rise to only remote or speculative possibilities of guilt." *Id.* at 985.

¶9     Here, the jury was instructed on the elements of murder:

> Before you can convict the defendant of [murder], you must find from the evidence, beyond a reasonable doubt . . . :
> (1) That defendant, Brad R. Ricks;
> (2) (a) intentionally or knowingly caused the death of Maurice Lee;
> OR
> (b) intending to cause serious bodily injury to Maurice Lee, committed an act clearly dangerous to human life that caused the death of Maurice Lee;
> OR
> (c) acting under circumstances evidencing a depraved indifference to human life, knowingly engaged in conduct which created a grave risk of death to Maurice Lee and thereby caused the death of Maurice Lee.

This instruction reflects the statutory definition of the crime. *See* Utah Code Ann. § 76-5-203(2)(a) through -203(2)(c) (LexisNexis Supp. 2008) (stating the elements of murder).

¶10    We begin by considering whether the evidence was sufficient to support the third statutory variant of murder: that the killing was committed with a depraved indifference to human life.

> (2) Criminal homicide constitutes murder if:
> . . .
> (c) acting under circumstances evidencing a depraved indifference to human life, the actor knowingly engages in conduct which creates a grave risk of death to another and thereby causes the death of another; . . . .

*Id.* § 76-5-203(2)(c). To be found guilty of depraved indifference murder under this section, "a defendant must know the nature of his conduct, must know the circumstances that give rise to the risk of death, and must know that the risk constitutes a grave risk of death." *State v. Standiford*, 769 P.2d 254, 263 (Utah 1988); *see also State v. Powell*, 872 P.2d 1027, 1030 (Utah 1994).

¶11    Ricks claims that he was at most guilty of reckless manslaughter. The jury was also instructed on reckless manslaughter as defined in the Utah Code:

> Criminal homicide constitutes manslaughter if the actor:
> (a) recklessly causes the death of another; . . . .

Utah Code Ann. § 76-5-205(1)(a) (LexisNexis 2008). As defined by statute, a person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk" that the harm will occur. *Id.* § 76-2-103(3) (Supp. 2008). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's

standpoint." *Id.* As our supreme court has explained, "[d]epraved [indifference] murder requires greater culpability than reckless manslaughter." *Standiford*, 769 P.2d at 263. This is because "the *probability* of the risk of death must be higher for depraved murder than for manslaughter." *Id.* at 264. A "grave risk of death" is a "*highly likely probability* that death will result," which is greater than the "substantial and unjustifiable risk" required to convict of manslaughter. *Id.*

¶12 Ricks relies on the supreme court's opinion in *Boggess v. State*, 655 P.2d 654 (Utah 1982). Boggess was smoking marijuana and playing with his single-action .44 magnum revolver, loading and unloading it, pointing it at various targets in the room, and "dry-firing" it. *Id.* at 654. When his wife asked him to unload the gun, he said, "It's not loaded," pointed it at her, and pulled the trigger. *Id.* The gun discharged, killing her. *Id.* Boggess was convicted of reckless manslaughter, and our supreme court affirmed the conviction. The court noted that Boggess was aware of the dangers associated with the use of guns, had admitted that he should have looked to ensure the gun was unloaded before firing it, and had acknowledged that he picked a "hell of a way to show it's unloaded." *Id.* at 655.

¶13 Ricks argues that *Boggess* controls here, effectively capping his own criminal liability at reckless manslaughter. He asserts that, as in *Boggess*, "[t]he only evidence presented by either side at trial established that Mr. Ricks did not believe the gun was loaded." First of all, we are not persuaded that *Boggess* represents an upper limit on jury verdicts in "dry-firing" cases. The *Boggess* court did not reverse a conviction for depraved indifference murder; it affirmed a conviction for reckless manslaughter. Whether it would have affirmed a conviction for depraved indifference murder on the same facts is a matter of speculation.

¶14 Moreover, this case is not as factually similar to *Boggess* as Ricks's argument assumes. While Ricks may not have believed an unexpended shell was in the firing position, he did

know that his pistol was "loaded" as that term is commonly understood. *See, e.g.*, Macmillan Dictionary, http://www.macmillan dictionary.com/us/dictionary/america/loaded (last visited Oct. 2, 2013) (defining loaded as "containing bullets").[4] Accordingly, while Boggess believed the gun he fired was unloaded, Ricks knew the gun he fired was loaded but believed that no round was chambered. He believed this after having checked the chamber by pulling back the slide—the same action, albeit to a lesser degree, required to chamber a round. He performed this check while intoxicated and apparently in marginal light. Accordingly, even if the facts of *Boggess* could not support a conviction for depraved indifference murder, the facts of the present case demonstrate greater culpability.

¶15    As our supreme court has made clear, the risk of death involved in depraved indifference murder "must be so great as to evidence such an indifference to life as to be tantamount to that evidenced by an intent to kill." *State v. Standiford*, 769 P.2d 254, 259 (Utah 1988). Risk has two dimensions: the likelihood of the

---

4. A semiautomatic pistol with no shell in firing position is not "loaded" as that term is defined in one statute inapplicable here. Utah Code section 76-10-502 states:

> (1) For the purpose of this chapter, any pistol, revolver, shotgun, rifle, or other weapon described in this part shall be deemed to be loaded when there is an unexpended cartridge, shell, or projectile in the firing position.
> (2) Pistols and revolvers shall also be deemed to be loaded when an unexpended cartridge, shell, or projectile is in a position whereby the manual operation of any mechanism once would cause the unexpended cartridge, shell, or projectile to be fired.

Utah Code Ann. § 76-10-502 (LexisNexis 2008). Ricks did not rely on this statute below, nor does he on appeal. And by its own terms, it does not apply to chapter 5 of title 76 of the Utah Code.

potential harm and the magnitude of that harm. *Id.* at 263 n.9 ("The magnitude of a given risk is determined in part by the probability that the risk will be actualized and in part by the seriousness of the consequence if the risk is actualized."). Here, the magnitude of the harm was extreme: death was virtually certain to result if the gun discharged. The likelihood of harm was also great: as explained above, the gun was loaded and Ricks knew it was loaded, yet he placed the gun to Lee's forehead and pulled the trigger. The participants themselves regarded this act as proof that Ricks had "the balls big enough to do something"—they understood they were flirting with death.

¶16    This case is as close as it is tragic. Justice Stewart, writing separately in *Boggess*, stated that determining the degree of guilt in that case required "making a judgment as to where on a continuum of unreasonable conduct one's behavior passes from negligence to recklessness." *Boggess*, 655 P.2d at 658 (Stewart, J., concurring). "In essence," he wrote, "it is a matter of judging when conduct is no longer just gray but dark gray." *Id.* "Such judgments," he continued, "are for juries to make, not judges." *Id.*

¶17    The case before us calls for a similar judgment further along the same continuum. This judgment belongs to the jury so long as the evidence, viewed in the light most favorable to the jury's verdict, is not so inconclusive or inherently improbable that "reasonable minds must have entertained a reasonable doubt." *See State v. Ali*, 2013 UT App 113, ¶ 3, 300 P.3d 794 (citation and internal quotation marks omitted). Here, reasonable minds could conclude that Ricks's actions created not merely the "substantial and unjustifiable risk" required to convict of reckless manslaughter, but the "grave risk of death" and "depraved indifference to human life" required to convict of depraved indifference murder. *Compare* Utah Code Ann. § 76-2-103(3) (LexisNexis 2008), *id.* § 76-5-205(1)(a), *and State v. Standiford*, 769 P.2d 254, 262–63 (Utah 1988), *with* Utah Code Ann. § 76-5-203(2)(c) (LexisNexis Supp. 2008). Accordingly, we reject Ricks's sufficiency challenge to his conviction for depraved indifference murder.

¶18    Ricks also challenges the sufficiency of the evidence to support the other variants of murder on which the jury was instructed. However, when a jury is instructed on multiple variants of murder, "[t]he State need[s] to provide only enough evidence to satisfy [one] of these tests." *State v. Hales*, 2007 UT 14, ¶ 60, 152 P.3d 321. Specifically, when a jury has been instructed on multiple variants of murder, and the defendant challenges his conviction on appeal on the ground that his acts were at most reckless, the reviewing court will sustain the verdict against a sufficiency challenge so long as it is "reasonable for a jury to find the requisite intent and actions for depraved indifference murder from the . . . evidence." *State v. Powell*, 872 P.2d 1027, 1033 (Utah 1994). Accordingly, because we have concluded that the evidence was sufficient to support a jury finding of depraved indifference murder, we need not analyze whether the evidence would also support the other variants of murder on which the jury was instructed.

## II. Ineffective Assistance of Counsel

¶19    Ricks contends that he received ineffective assistance of counsel when his trial counsel failed to object to a jury instruction and failed to object to the prosecutor's closing arguments.[5] Under *Strickland v. Washington*, an ineffective assistance of counsel claim has two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing

---

5. Although Ricks nominally relies on the Utah Constitution, he undertakes no separate state constitutional analysis. Where an appellant "neither attempts any separate state constitutional analysis nor suggests that the two constitutional protections are anything but coextensive," the state constitutional issue is not properly before the reviewing court. *State v. Worwood*, 2007 UT 47, ¶ 19, 164 P.3d 397.

that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984); *see also State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A.      Failure to Object to a Jury Instruction

¶20     Ricks contends that his trial counsel was deficient because he did "not [request] an appropriate jury instruction" or object to the jury instruction defining all three variants of the crime of murder. Specifically, Ricks complains that his trial counsel failed to object to a jury instruction that allowed the jury to convict him of murder if it found that he killed Lee knowingly or intentionally or while intending serious bodily injury. This failure to object was deficient, Ricks argues, because mid-trial the prosecutor conceded—and the trial court ruled—that no evidence supported those variants of the crime. That is not how we read the record.

¶21     At the conclusion of the State's case in chief, Ricks moved for a directed verdict on the ground that, absent any "sign of any kind of anger or hatred," the evidence did not support any variant of the crime of murder. The prosecutor responded that "the evidence could be viewed by the jury to support any one of those three" variants of murder: that the act was knowing or intentional, that Ricks had intended to cause serious bodily injury, or that Ricks had acted with depraved indifference to human life. Ricks is correct

that the trial court expressed skepticism, asking, "Where's the evidence that he intended to kill him?" But after hearing further from the prosecutor, the court denied the motion on the basis that "at this point it's a jury question."

¶22    Because the trial court had already ruled that whether the evidence supported any of these three variants of murder was a jury question, an objection to the murder instruction on the ground that the evidence did not support the first two variants of the crime would have been futile. The Sixth Amendment does not require counsel to make futile objections. *State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52.

¶23    Ricks suffered no prejudice in any event. As explained above, under controlling case law, when a jury has been instructed on multiple variants of murder, a conviction will be sustained on appeal so long as it is "reasonable for a jury to find the requisite intent and actions for depraved indifference murder from the . . . evidence." *State v. Powell*, 872 P.2d 1027, 1033 (Utah 1994). Because we have already determined that the evidence was sufficient for the jury to find Ricks guilty of depraved indifference murder, instructing on other variants of the crime did not prejudice him.

B.    Failure to Object to the State's Closing Argument

¶24    Finally, Ricks argues that his trial counsel was deficient for failing "to object to the prosecutor's incorrect statement of law" during the State's closing argument.

¶25    Because this ineffective assistance of counsel claim assumes misconduct by the prosecutor, we first consider whether any objectionable prosecutorial misconduct occurred. Under *State v. Troy*, prosecutorial misconduct claims are analyzed under a two-step test. 688 P.2d 483, 486 (Utah 1984) (citation and internal quotation marks omitted). Courts first ask whether "the remarks call to the attention of the jurors matters which they would not be

justified in considering in determining their verdict." *Id.* If so, courts then consider whether jurors were, "under the circumstances of the particular case, probably influenced by those remarks." *Id.* "When the prosecution misstates the law during closing argument, it necessarily calls the jurors' attention to matters that they are not justified in considering, thus satisfying the first prong of the prosecutorial misconduct test." *State v. Todd*, 2007 UT App 349, ¶ 28, 173 P.3d 170 (citations omitted).

¶26    Here, Ricks contends that the prosecutor misstated the law by in effect asserting that Ricks "didn't have to intend to cause the death, but if he simply knowingly and intentionally pulled the trigger, he was guilty of murder." Again, this is not how we read the record.

¶27    In the remarks that Ricks relies on, the prosecutor did not state that Ricks was guilty of murder so long as he knowingly and intentionally pulled the trigger. However, she did state that Ricks in fact knowingly and intentionally pulled the trigger:

> [Ricks k]nowingly went down that hallway, knowingly, intentionally got that gun, knowingly and intentionally turned around, came back down that hallway. He either dropped the clip, unloaded it, reloaded it and went in or he just pulled it back part way to check. Either way he intentionally and knowingly came around the corner into the kitchen with the gun in his hand. He intentionally and knowingly walked up to Maurice Lee and put the gun against Maurice's forehead . . . . He intentionally and knowingly pulled the trigger.

The prosecutor then went on to explain that to be guilty of depraved indifference murder, Ricks did not have to intend to cause death, but he did have to have acted knowingly, in a manner utterly calloused toward the value of human life, and with

complete indifference to whether his knowing conduct would create a grave risk of death:

> Now for depraved indifference you only have to say well, he knowingly did that. He doesn't have to intend to cause death. He doesn't even have to be aware that he's reasonably certain to cause death. Knowingly does the act, he's utterly calloused toward the value of human life if he puts that loaded gun to a man's forehead and pulls the trigger. Complete indifference to whether his conduct, his knowing conduct will create a grave risk of death to another.

¶28    In this passage, the prosecutor was paraphrasing our supreme court's *Standiford* opinion, which refers to the mental state required for depraved indifference murder in such terms as "utter callousness toward the value of human life," "a complete and total indifference as to whether one's conduct will create the requisite risk of death," "proof that the defendant did an act which he knew created a grave risk of death to another," and the fact that the accused "had to act knowingly." *State v. Standiford*, 769 P.2d 254, 261–63 (Utah 1988). Ricks has not demonstrated, or even undertaken to demonstrate, that the prosecutor substantially mischaracterized *Standiford*.

¶29    Because Ricks has not shown that the prosecutor misstated the law, he has also failed to show that any objection by his trial counsel would have been well taken. Accordingly, he has not demonstrated that his trial counsel was ineffective. *See State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52.

### CONCLUSION

¶30    We conclude that Ricks has not shown that the evidence of depraved indifference murder was so lacking that no reasonable

juror could have found him guilty beyond a reasonable doubt. We further conclude that Ricks's claims of ineffective assistance of counsel fail because objections to the jury instruction on the variants of murder and to the prosecutor's closing argument would have been futile.

¶31    Affirmed.

———