2015 UT App 42

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ERNESTO BRYCE HARDS,
Defendant and Appellant.

Memorandum Decision
No. 20130395-CA
Filed February 26, 2015

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 111905970

Richard G. Uday, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGES JAMES Z. DAVIS and KATE A. TOOMEY concurred.

PEARCE, Judge:

¶1    Ernesto Bryce Hards appeals from his conviction for aggravated burglary. He contends that the State presented insufficient evidence to support a finding that he entered a building with the intent to commit a felony. He also contends that the district court erred by submitting to the jury the question of whether that building was a dwelling. Finally, he contends that his trial counsel's performance was constitutionally ineffective.

¶2    The charges in this case arose from an attack on L.H. in March 2011. L.H. had been staying at a building in an industrial

part of Salt Lake City. The building had originally been a commercial structure but had been repurposed, in apparent violation of zoning regulations, as a "flophouse." L.H. testified that he had been renting a room there for two or three months. L.H. testified that two people, Jose Alvarez and Hards, had broken open the door to his room while he was sleeping inside. According to L.H., one or both of them attacked L.H. as he lay in bed, leaving him with a cut over his eye. L.H. could not definitively say whether Hards punched him but believed that both Alvarez and Hards hit him in the face.

¶3 Alvarez and Hards left but returned several hours later. When L.H. heard banging on his door, he believed it was the building manager and opened the door. It was the manager, but he was accompanied by Alvarez and Hards. Alvarez insisted that L.H. come to another room. When L.H. did so, Alvarez punched L.H. before Hards stepped in to stop the attack.

¶4 The State charged Hards with robbery and aggravated burglary. At Hards's trial, Alvarez admitted to punching L.H. on both occasions. Alvarez also testified that, while Hards may have entered L.H.'s room, Hards had not hit L.H. However, a police officer testified that Alvarez had claimed in a police interview that Hards had "touche[d] [L.H.] up a couple of times."

¶5 Hards also testified. Hards admitted to hitting L.H. but claimed it had been during a fight earlier in the day. Hards denied entering L.H.'s room. When the State rested, Hards's trial counsel unsuccessfully moved for a directed verdict, arguing that the industrial building where the attack occurred was not a dwelling within the meaning of the burglary statute. A jury ultimately convicted Hards of aggravated burglary but acquitted him of the robbery charge.

¶6 The crime of aggravated burglary has two elements. Utah Code Ann. § 76-6-203(1) (LexisNexis 2012). The first requires that the defendant attempt or commit a burglary. *Id.* "An actor is

guilty of burglary who enters or remains unlawfully in a building or any portion of a building with intent to commit" one of seven proscribed acts, including "an assault on any person . . . ." *Id.* § 76-6-202(1)(c).

¶7     The second element requires that, in the course of that burglary or attempt, the defendant or a co-burglar commit one of three acts that constitute aggravating factors. *Id.* § 76-6-203(1). The defendant or co-burglar must (1) cause bodily injury to a non-participant, (2) use or threaten the immediate use of a dangerous weapon against a non-participant, or (3) possess or attempt to use any explosive or dangerous weapon. *Id.* The section relevant to our analysis reads, "A person is guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary the actor or another participant in the crime . . . causes bodily injury to any person who is not a participant in the crime . . . ." *Id.* § 76-6-203(1)(a).

¶8     Hards first contends that "insufficient evidence supports the intent to commit an assault element" of his aggravated burglary charge. "To determine whether there was sufficient evidence to convict a defendant, we do not examine whether we believe the evidence at trial established guilt beyond a reasonable doubt." *State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346. Instead, we view the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict. *State v. Ricks*, 2013 UT App 238, ¶ 5, 314 P.3d 1033. If, in that light, the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime, we will conclude that the evidence was insufficient. *Id.*

¶9     Hards asserts that because there was no direct evidence of his intent, a reasonable jury could not have found beyond a reasonable doubt that he entered L.H.'s room with the intent to commit a felony. Specifically, he argues that "[L.H.] was not able to testify that [Hards] acted directly in any part of" the attack in L.H.'s room. Hards also highlights Alvarez's trial testimony that

Hards had not hit L.H. We note that whether Hards actually punched L.H. is different from the question before the jury—whether Hards *entered* L.H.'s room with the *intent* to assault L.H.[1]

¶10 "It is well established that intent can be proven by circumstantial evidence." *State v. James*, 819 P.2d 781, 789 (Utah 1991). "[T]he facts of a particular case may support an inference of intent to commit burglary." *State v. Johnson*, 771 P.2d 1071, 1072 (Utah 1989); *see also, e.g.*, *State v. Robertson*, 2005 UT App 419, ¶ 16, 122 P.3d 895 (holding that, for purposes of a burglary conviction, a jury could reasonably infer intent to commit theft from a defendant's unauthorized presence in the victim's residence, evidence of forced entry, and the defendant's subsequent flight). Hards contends that L.H. was unable to testify with certainty who hit him during the incident. But Hards fails to explain L.H.'s testimony that he believed both Alvarez and Hards had done so. Hards also fails to address Alvarez's statement to police, which was discussed at trial, that Hards "touche[d] [L.H.] up." Because Hards does not mention this evidence, his brief on appeal is devoid of any argument to explain why a reasonable jury could not have inferred from it that Hards entered L.H.'s room with the intent to assault L.H.

¶11 In light of record evidence that Hards entered L.H.'s room and that Hards assaulted L.H., and because the jury was asked to determine Hards's intent rather than just his physical actions,

---

1. Moreover, assault does not necessarily require physical contact. *See* Utah Code Ann. § 76-5-102(1) (LexisNexis 2012) ("Assault is: (a) an attempt, with unlawful force or violence, to do bodily injury to another; (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or (c) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another.").

we conclude that the evidence presented to the jury was not so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that Hards committed the aggravated burglary. *See Ricks*, 2013 UT App 238, ¶ 5.

¶12 Hards also challenges the absence of a jury instruction on party liability (otherwise known as accomplice liability.) He asserts that "[p]arty liability in this case necessarily requires that there be proof that somehow [Hards] solicited, requested, commanded, encouraged or intentionally aided [Alvarez] to commit the crime before he could be liable." He relies on Utah's accomplice-liability statute which provides that a defendant is liable as a party to an offense when he or she, "acting with the mental state required for the commission of an offense[,] . . . solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes [the] offense." Utah Code Ann. § 76-2-202 (LexisNexis 2012). Hards suggests that the absence of a party liability instruction created a "likelihood that the jury decided that proof of the bodily injury caused by [Alvarez] was sufficient to convict [Hards]."

¶13 At trial, the State did not argue that Hards was an accomplice to Alvarez's aggravated burglary. Rather, the State presented evidence that Hards himself had committed aggravated burglary, and the jury was instructed accordingly. In other words, there was no need to instruct the jury about party liability, because the State argued and produced evidence that Hards committed aggravated burglary when he entered L.H.'s room with the intent to assault him and that either Hards or Alvarez caused bodily injury to L.H.

¶14 Hards's argument may also be plausibly read as a claim that the trial court should have provided a party liability instruction on just the aggravating circumstance—that a non-participant was injured in the course of the burglary. Read in this fashion, Hards posits that, because the jury may have believed his testimony that he did not personally assault L.H., he

could only be liable for aggravated burglary as an accomplice. There are two problems with this argument. First, the State presented evidence that Hards *did* injure L.H. while in his room. Second, even in the absence of evidence that Hards had injured L.H., the plain language of the aggravated burglary statute does not require that the defendant himself injure the non-participant. The statute requires only that "the actor *or another participant in the crime* . . . cause[] bodily injury to any person who is not a participant in the crime." Utah Code Ann. § 76-6-203(1)(a) (LexisNexis 2012) (emphasis added). This element is satisfied if either Hards or Alvarez injured L.H. *Cf. State v. Seel*, 827 P.2d 954, 962 (Utah Ct. App. 1992) (concluding that a defendant was properly charged with aggravated burglary because the aggravating factor—possession of a dangerous weapon—was satisfied by his co-burglar's possession of a gun even if the defendant was unaware of that possession).

¶15 Hards next contends that the district court erred by allowing the jury to determine whether L.H.'s room constituted a dwelling. Specifically, he urges us to "re-evaluate the definition of dwelling in our statutory scheme and [to] find that unlawful occupancy does not convert a structure into a dwelling [based] on a temporary non-intended use of that structure." We need not examine the definition, however, because a conviction for aggravated burglary does not require proof of a dwelling.

¶16 Burglary is a third degree felony unless it occurs in a dwelling. *See* Utah Code Ann. § 76-6-202(2) (LexisNexis 2012). If the burgled building is a dwelling, the burglary becomes a second degree felony. *Id.* But the first degree felony of aggravated burglary occurs when a defendant commits a burglary of *either* degree and, among other aggravating factors, any participant in that crime injures a non-participant. *Id.* § 76-6-203; *see also State v. Porter*, 705 P.2d 1174, 1178 (Utah 1985) ("Aggravated burglary . . . is a first degree felony regardless of whether a dwelling is involved.").

¶17 Because Hards was charged with and convicted of aggravated burglary, it is immaterial whether the building L.H. lived in constituted a "dwelling" under the burglary statute. Moreover, to the extent that the jury was incorrectly instructed that a conviction required a finding that the building was a dwelling, any such error cut in Hards's favor—by adding an additional element to be proved—and was consequently harmless. We therefore decline Hards's invitation to reevaluate the term "dwelling."

¶18 Hards also contends that his trial counsel's performance was constitutionally ineffective for a host of reasons. To succeed on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the defendant was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient when it falls below an objective standard of reasonableness. *Id.* A defendant suffers prejudice when, absent the deficiencies of counsel's performance, there is a reasonable likelihood that the defendant would have received a more favorable result at trial. *Id.* at 696. Because both deficient performance and resulting prejudice are requisite elements of an ineffective assistance of counsel claim, a failure to prove either element defeats the claim. *Id.* at 697.

¶19 Hards first complains that his "trial counsel failed to prepare for trial, did not engage him in that preparation, [and] ignored him and his repeated requests for assistance and attention to his case."[2] However, he proffers no specific examples and does not explain how prejudice may have resulted. Proof of ineffective assistance of counsel must be "a demonstrable reality and not a speculative matter." *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998) (citation and internal

---

2. Hards also claims that "counsel told [Hards] that out-of-state witnesses were too expensive to call." This suggests that counsel did respond to at least some of Hards's requests.

quotation marks omitted). Because any prejudice arising from counsel's alleged failure to prepare for trial is speculative, Hards's claim in this regard fails.

¶20    Hards next asserts that his trial counsel's performance was ineffective for failing to fully investigate his case. "Specifically, counsel was requested to talk to the [out-of-state] owner of the property to divine whether [L.H.] had permission to be there. Counsel did not so investigate . . . ." However, whether L.H. had permission to be at the property is irrelevant to whether Hards committed burglary. While a burglary conviction requires that the defendant be in a building unlawfully, Hards does not provide any authority for the proposition that the victim of the burglary must be there lawfully. *See* Utah Code Ann. § 76-6-202(1) (LexisNexis 2012). Accordingly, we conclude that counsel's failure to determine whether L.H. had permission to be in the building did not prejudice Hards.

¶21    Hards also asserts that trial counsel "fail[ed] to assert beneficial, current law." Specifically, he claims that counsel failed to request an instruction on party liability. However, as we have explained, because Hards was tried and convicted as a principal, no instruction on party liability was necessary. Thus, no prejudice could have resulted from counsel's failure to request such an instruction.

¶22    Finally, Hards argues that his trial counsel's performance was deficient because "counsel surprised [Hards] and forced him to testify at the trial." "It is . . . recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case [such as] whether to . . . testify in his or her own behalf . . . ." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Thus, whether or not he does testify rests entirely in his own decision." *Griffin v. California*, 380 U.S. 609, 618 (1965) (Stewart, J., dissenting). However, the only resulting prejudice Hards identifies is that "the jury may not have believed [Hards's]

testimony." Such speculation is insufficient to demonstrate prejudice.[3] *See Chacon*, 962 P.2d at 50.

¶23    Hards has not demonstrated that prejudice resulted from any of his counsel's allegedly deficient acts or omissions. We therefore reject his ineffective assistance of counsel claim.

¶24    Affirmed.

_____

3. We note also that the record suggests that, far from being forced to testify, Hards desired to take the stand. Hards expressed this desire at two preliminary hearings. At the first hearing, counsel explained that he had advised Hards not to testify. Counsel then asked whether Hards wanted to follow that advice. Hards replied, "I want to testify." At the second hearing, Hards interrupted his counsel to complain, "[Y]ou won't let me testify at my prelim" and then stated, "I want to testify already, man." At trial, with Hards present, the court asked if Hards had been advised of "his rights to testify" and that "he will be subject to cross examination if he does testify." Counsel responded, "Yes, Your Honor." Hards then testified.